IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM GREG THOMAS,

        Petitioner,

v.                                CASE NO. 3:03-cv-237-J-32TEM
                                           CAPITAL CASE

MICHAEL D. CREWS,

        Respondent.

PETITIONER'S MOTION TO AMEND HABEAS PETITION AND/OR
EXHAUST EIGHTH CLAIM AT ISSUE IN *HURST V. FLORIDA*

        COMES NOW the Petitioner, WILLIAM GREG THOMAS, to respectfully request that he be permitted to amend his habeas petition currently pending before this Court to include the Eighth Amendment claim currently pending before the United States Supreme Court in *Hurst v. Florida*, 135 S.Ct. 1531 (March 9, 2015), and/or be afforded the opportunity to exhaust the Eighth Amendment claim at issue in *Hurst*. In support thereof, Petitioner states:

        1.        Petitioner is under a sentence of death pursuant to the judgment of the circuit court of the Fourth Judicial Circuit, Duval County, Florida. He is currently in the custody of the Florida Department of Corrections and is housed at Union Correctional Institution on Florida's death row.

        2.        On March 22, 2004, Petitioner filed a Petition under 28 USC § 2254 with this Court in which he sought federal habeas relief from his state court conviction and sentence of death. Ground IV of that petition asserted that "Mr. Thomas' sentencing jurors were repeatedly misinformed and misled by instructions and arguments which unconstitutionally and inaccurately diluted their sense of responsibility for sentencing contrary to the eighth and fourteenth amendments. Defense counsel's failure to object and adequately litigate this issue was

ineffective assistance of counsel." (Doc. 12 at 4-5). Ground VIII of the petition asserted that "The structure and implementation of Florida's Death Penalty is unconstitutional under *Ring v. Arizona*." (Doc. 12 at 7).

3. In its September 3, 2013, order denying habeas relief this Court ruled that the portion of Ground IV premised upon *Caldwell v. Mississippi*, 472 U.S. 320 (1985), was procedurally barred (Doc. 141 at 28). However, this Court did acknowledge that the Florida Supreme Court had addressed whether trial counsel was ineffective for failing to object to jury instructions that violated *Caldwell* and amount to *Caldwell* error. This Court then noted that the Florida Supreme Court in rejecting the ineffectiveness claim wrote: "This Court will note that the Florida Standard Jury Instructions have been determined to be in compliance with the requirements of *Caldwell*." (Doc. 141 at 29, quoting *Thomas v. State*, 838 So. 2d 535, 541 (Fla. 2003). While this Court noted that the analysis of the ineffectiveness claim was not an unreasonable application of federal law, it did not explicitly recognize that the Florida Supreme Court actually had in fact addressed the merits of the *Caldwell* claim that Petitioner presented to this Court in his habeas petition while resolving the ineffectiveness claim.[1] Thus, the procedural

---

[1] In concluding that the Florida Supreme Court's analysis was not contrary to well established federal law, this Court did not address the 1992 decision in *Espinosa v. Florida*, 505 U.S. 1079 (1992), in which the United States Supreme Court rejected the State of Florida's contention that a penalty phase jury in Florida was not a sentencer for Eighth Amendment purposes. Specifically overruled by *Espinosa* was the Florida Supreme Court's decision in *Smalley v. State*, 546 So. 2d 720, 722 (Fla. 1989), holding that because a Florida penalty phase was only advisory, it was not a sentencer and the jury instructions did not need to comport with the Eighth Amendment. Indeed, the Florida Supreme Court concluded that the Florida standard jury instructions did not violate *Caldwell* because a Florida penalty phase jury was not a sentencer - its verdict was merely advisory. *Combs v. State*, 525 So. 2d 853, 857 (Fla. 1988) ("Clearly, under our process, the court is the final decision-maker and the sentencer-not the jury."). The ruling in *Espinosa* was applied retroactively under Florida law because "it would not be fair to deprive [a successive postconviction litigant] of the [benefit of the] *Espinosa* ruling." *James v. State*, 615 So. 2d 668, 669 (Fla. 1993). The ruling in *Espinosa* was recognized in a capital direct appeal to have fundamental changed Florida law regarding the jury's role in Florida capital cases. *Jackson v. State*, 648 So. 2d 85, 88 (Fla. 1994) ("The Supreme Court

2

bar that this Court identified as to the *Caldwell* claim was not an independent procedural bar. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) ("As we have indicated in the past, when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded."). Indeed in deciding the ineffectiveness claim, the Florida Supreme Court specifically addressed Petitioner's *Caldwell* challenge to the jury instructions given in his case and held that the instructions were compliant with *Caldwell*.

4.     In its September 3, 2013, order denying habeas relief this Court ruled that Ground VIII of Thomas' habeas petition, which was premised upon *Ring v. Arizona,* 536 U.S. 584 (2002), was procedurally barred. Alternatively, this Court ruled that Ground VIII was without merit on the basis of *Evans v. Sec'y Fla. Dep't of Corr.*, 699 F.3d 1249 (11th Cir. 2012), *cert. denied* 133 S. Ct. 2393 (2013).

5.     On March 9, 2015, the United States Supreme Court granted certiorari review in *Hurst v. Florida*, 135 U.S. 1531 (2015), and stated the question for review as follows: "Whether Florida's death sentencing scheme violates the Sixth Amendment or the Eighth Amendment in light of this Court's decision in *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)."

---

rejected the State's argument that there is no need to instruct the jury with specificity because the jury is not the sentencer under Florida's sentencing scheme."). Thus in the wake of *Espinosa*, the Florida Supreme Court recognized that the penalty phase jury was not merely advisory under the Eighth Amendment, but a co-sentencer. However, no change was made to the Florida's standard jury instructions that continued to advised penalty phase juries that their role was merely advisory. This Court in denying relief on Ground IV of Petitioner's habeas petition indicated that the Florida Supreme Court's conclusion that Florida's standard jury instructions informing the jury that its penalty phase role was advisory comport with *Caldwell* was neither contrary to or an unreasonable application of clearly established federal law. *See Lambrix v. Singletary*, 520 U.S. 518, 528 (1997) ("In *Espinosa*, we determined that the Florida capital jury is, in an important respect, a cosentencer with the judge. As we explained: 'Florida has essentially split the weighing process in two.'").

3

6. On its face, the grant of review in *Hurst v. Florida* calls into question the continued vitality of *Evans v. Sec'y Fla. Dep't of Corr.,* the case that this Court relied upon in its September 3, 2013, order denying Ground VIII of Petitioner's habeas petition.

7. However an examination of the briefing in *Hurst* and the transcript of the October 13, 2015, oral argument shows that the Eighth Amendment part of the question presented extends well beyond *Ring v. Arizona,* which was decided solely on the basis of the Sixth Amendment. The applicability of *Caldwell v. Mississippi* to Florida penalty phase proceedings and whether the jury in Petitioner's case was erroneously told its verdict was merely advisory is now at issue. The failure in Florida to require the jury to identify what aggravating circumstances it found has been argued to the meaningfulness and adequacy of the subsequent appellate view under *Parker v. Dugger*, 498 U.S. 308, 321 (1991) ("The Constitution prohibits the arbitrary or irrational imposition of the death penalty. *Id*., at 466-467. We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally. *See, e. g., Clemons, supra*, at 749 (citing cases); *Gregg v. Georgia*, 428 U. S. 153 (1976)."). Also, the lack of a unanimous finding of the statutorily required determination that "sufficient aggravating circumstances" exist to justify a sentence of death is being argued in *Hurst* as contrary to the Eighth Amendment because it is contrary to a national consensus that juror unanimity is required in capital penalty phase proceedings.

8. At the oral argument all three of these Eighth Amendment arguments were discussed at length. First, during the oral argument, Justice Ginsburg raised concerns about whether Florida's capital sentencing scheme comports with the Eighth Amendment principle set forth in *Caldwell v. Mississippi*, 472 U.S. 320 (1985). *See* Transcript at 36-37. Immediately thereafter, Justice Scalia expressed skepticism as to Florida's compliance with *Caldwell*. *See*

4

Transcript at 38 ("I'm talking about what responsibility the jury feels. If the jury knows that if - - if we don't - - if - - if we don't find it an aggravator, it can't be found; or if we do find an aggravator, it must be accepted. That's a lot more responsibility than just, you know, well, you know, if you find an aggravator and you - - you weigh it and provide for the death penalty, the judge is going to review it anyway."). *Caldwell* is an Eighth Amendment case that dates back to 1985 and thus was the applicable law at the time that Petitioner's conviction became final. *See Thomas v. State*, 693 So. 2d 951 (Fla. 1997). And in 1992, also before Petitioner's trial, the United States Supreme Court rejected the State of Florida's argument that a Florida capital jury was merely advisory and not a sentencer for Eighth Amendment purposes. *Espinosa v. Florida*, 505 U.S. 1079, 1081-82 (1992).

9. During the *Hurst* oral argument on October 13, 2015, Justice Kagan asked questions as to whether the jury's findings underlying its death recommendation are part of the record and available for review by the appellate courts. *See* Transcript at 49-50. Under the Eighth Amendment meaningful appellate review has been found to be essential. *See Parker v. Dugger*, 498 U.S. at 321. The Supreme Court already held in *Parker* that the requirement of meaningful appellate review in capital cases dates back to the 1976 decision in *Gregg v. Georgia*. Certainly if the Supreme Court holds in *Hurst* that the absence of the jury's finding from the record precludes meaningful review under the Eighth Amendment, the holding would date back to 1976, well before when Petitioner's death sentence was final.[2]

10. During the oral argument, Justice Sotomayor asked whether a unanimous verdict or a verdict that is functionally equivalent to a unanimous verdict is required in capital cases

---

[2] In Petitioner's direct appeal, the Florida Supreme Court found sentencing error, but ruled it harmless without knowing what aggravating circumstances had been found by the jury. *Thomas v. State*, 693 So. 2d 951, 953 (Fla. 1997) ("Thomas next claims that the trial court failed to address mitigating evidence in its sentencing order. We agree.").

5

under the Eighth Amendment. *See* Transcript at 10-11, 25-26, 43-44, 45. Justice Scalia also posed questions as to whether unanimity was a requirement. *See* Transcript at 12. Justice Ginsburg asked whether a 7-5 death recommendation was the functional equivalent of a unanimous verdict. *See* Transcript at 45. In Petitioner's case, the jury returned a death recommendation by a vote of 11-1. A ruling in *Hurst* that, because there is a national consensus that juries in capital case must be unanimous, would implicate the validity of Petitioner's death sentence.

11. While Petitioner in Ground IV of his petition did raise a *Caldwell* claim, the meaningful appellate review and unanimity Eighth Amendment arguments in play in *Hurst v. Florida* were not included in Ground IV. Given the proceedings in *Hurst*, Petitioner seeks the opportunity to amend Ground IV to include those arguments and to further amplify the *Caldwell* argument that this Court found procedurally barred.

12. Further if Mr. Hurst prevails in the United States Supreme Court, that will provide Petitioner a mechanism for returning to Florida state courts in order to exhaust these claims. Certainly as to the *Caldwell* claim that this Court concluded was procedurally barred, the opportunity to exhaust the claim in the Florida state courts would cure the procedural default that this Court found and lift the procedural bar that this Court applied. Under Florida law, a decision by the United States Supreme Court that finds Florida's capital sentencing procedure violative of the Eighth Amendment may be presented in a Rule 3.851 motion or a state habeas corpus petition within one year of the United States Supreme Court decision. For example in *Hitchcock v. Dugger*, 481 U.S. 393 (1987), the United States Supreme Court concluded that the Florida Supreme Court had failed to properly apply *Lockett v. Ohio*, 438 U.S. 586 (1978). Shortly after the United States Supreme Court issued its decision in *Hitchcock,* death sentenced

6

individuals with active death warrants argued to this Court that they were entitled to the benefit of the decision in *Hitchcock*. Applying the analysis adopted in *Witt v. State,* 387 So.2d 922 (Fla. 1980)*,* the Florida Supreme Court ruled that *Hitchcock* constituted a change in the law of fundamental significance that could properly be presented in a successive Rule 3.850 motion or a petition for a writ of habeas corpus. *Riley v. Wainwright*, 517 So. 2d 656, 660 (Fla. 1987); *Thompson v. Dugger*, 515 So. 2d 173, 175 (Fla. 1987); *Downs v. Dugger*, 514 So. 2d 1069, 1070 (Fla. 1987); *Delap v. Dugger*, 513 So. 2d 659, 660 (Fla. 1987); *Demps v. Dugger*, 514 So. 2d 1092 (Fla. 1987). Accordingly in addition to seeking to amend the pending petition, Petitioner seeks an opportunity to return to Florida state courts to present his Eighth Amendment claims that are at issue in *Hurst v. Florida. See Rhines v. Weber*, 544 U.S. 269, 275 (2005) ("Under this procedure, rather than dismiss the mixed petition pursuant to *Lundy*, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.").

      13.     In addition to the Eighth Amendment claims in play in *Hurst v. Florida*, the Sixth Amendment claim under *Ring v. Arizona* is also before the United States Supreme Court. This concerns whether a Florida jury made the requisite findings under Florida law to render the defendant eligible for a sentence of death. In accordance with Florida law, Petitioner's jury was instructed as required by Florida Statute §921.141(2) that:

> After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
>
> **(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);**
>
> (b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and

7

>       (c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.

(Emphasis added) (Trial ROA 1451).³ Thus in order for Petitioner to be eligible for a sentence of death, the jury had to find, not just the presence of an aggravating circumstance, but whether sufficient aggravating circumstances existed to justify a sentence of death. The Florida statutory language does differ from the language in *Ring v. Arizona*. The presence of one aggravating circumstance under Florida law does not render the defendant death eligible.

14. While Ground VIII of Petitioner's habeas petition did argue that "Florida's Death Penalty is unconstitutional under *Ring v. Arizona*," Petitioner seeks to amend Ground VIII to include the Eighth Amendment arguments at issue in *Hurst v. Florida* and to further amplify the Sixth Amendment argument that this Court found procedurally barred.⁴

15. Further, if Mr. Hurst prevails in United States Supreme Court as to the Sixth Amendment that will provide Petitioner a mechanism for returning to Florida state courts in order to exhaust his *Ring* claim. As explained *supra*, a favorable ruling from the United States Supreme Court would provide Petitioner the opportunity to exhaust the claim in the Florida state courts and lift the procedural bar that this Court applied. Under Florida law, a decision by the

---

³ The jury instruction language in pertinent part read: "If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without the possibility of parole for 25 years. **Should you find sufficient aggravating circumstances do exist**, it will be your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances." (Trial ROA 1451) (Emphasis added).

⁴ During the October 13th oral argument in *Hurst*, the State conceded that *Ring v. Arizona* does apply in Florida and requires that the jury make the death eligibility determination or that the eligibility determination be established by admission. *See* Transcript at 37 ("MR. WINSOR: That was before *Ring*. And we're not contesting that *Ring* would require a jury finding or an admission of those elements."). This concession means that the State admitted that the Eleventh Circuit decision in *Evans* is erroneous. Petitioner thinks his pending habeas petition should be amended to include reliance upon this admission by the State of Florida.

8

United States Supreme Court that finds Florida capital sentencing procedure violative of the Eighth Amendment may be presented in a Rule 3.851 motion or a state habeas corpus petition within one year of the United States Supreme Court decision.

16.   Moreover, the retroactivity of a favorable decision in *Hurst* as to the Petitioner's Sixth Amendment claim is decided by the Florida Supreme Court on the basis of state law. *See Witt v. State*. Thus, the Florida Supreme Court could determine under *Witt* that a favorable *Hurst* decision is retroactive to Petitioner and grant relief obviating the need to further litigate the penalty phase issue raised in the pending habeas petition. In such circumstances, judicial economy would best be served by avoiding piecemeal litigation and staying these proceedings to permit state court proceedings initially to address the ramifications of a favorable *Hurst* decision. *Rhines*, 544 U.S. at 275.

17.   Recently, the United States Supreme Court held that the Eighth Amendment mandates that "[p]ersons facing that most severe sanction must have a fair opportunity to show that the Constitution prohibits their execution." *Hall v. Florida*, 134 S.Ct. 1986, 2001 (2014). Given the pendency of *Hurst v. Florida* and the Sixth and Eighth Amendment arguments at issue therein, Petitioner seeks what *Hall v. Florida* promised, "a fair opportunity to show that the Constitution prohibits his execution." In order to afforded "the fair opportunity," Petitioner must be on notice of the result the United States Supreme Court reaches in *Hurst v. Florida*. *See Lankford v. Idaho*, 500 U.S. 110, 126-27 (1991) ("Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure. *** If notice is not given, and the adversary process is not permitted to function properly, there is an increased chance of error, see, *e.g., United States v. Cardenas,* 917 F.2d 683, 688-689 (CA2 1990), and with that, the possibility of an incorrect result.").

9

18. Currently, Petitioner is without representation in state court. Despite the existence of the state court registry system and the CCRC office which supposedly guarantee that death sentenced individuals will be provided collateral representation, Petitioner has been without state court collateral counsel since Dale Westling was discharged as his registry counsel on November 5, 2003, as the online docket of Duval County Clerk of Court reflects. For 12 years now, the State of Florida has not provided Petitioner with collateral representation. Accordingly, undersigned counsel seeks authorization of this Court for him to represent Petitioner in state court proceedings that are necessary to exhaust Petitioner's Sixth and Eighth Amendment claims under *Hurst v. Florida*. In *Harbison v. Bell*, 556 U.S. 180, 190 n.7 (2009), the United States Supreme Court stated:

> Pursuant to § 3599(e)'s provision that counsel may represent her client in "other appropriate motions and procedures," a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation. This is not the same as classifying state habeas proceedings as "available post-conviction process" within the meaning of the statute.

Thus, pursuant to 18 USC § 3599(e), Petitioner requests that this Court authorize his court-appointed CJA to initiate state collateral proceedings in order to exhaust his Sixth and Eighth Amendment claims under *Hurst v. Florida*. *See Gore v. Crews*, 720 F.3d 811, 814 n.1 (11th Cir. 2013).

WHEREFORE, Petitioner respectfully requests this Court to grant Petitioner leave to file an Amended Petition for the reasons set forth in this motion and stay these proceedings pending a decision in *Hurst v. Florida*. Petitioner also requests that this Court authorize his court-appointed CJA counsel authorization to appear in state court collateral proceedings in order to exhaust his *Hurst* related claims.

Respectfully submitted,

/s/ Martin J. McClain
MARTIN J. MCCLAIN
Fla. Bar No. 0754773
McClain & McDermott, P.A.
141 N.E. 30th Street
Wilton Manors, Florida 33334
Telephone: (305) 984-8344
FAX: (954)564-5412

Counsel for Petitioner

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all other parties who have appeared.

/s/ Martin J. McClain
MARTIN J. MCCLAIN
McClain & McDermott, P.A.
141 N.E. 30th Street
Wilton Manors, Florida 33334
Telephone: (305) 984-8344
FAX: (954)564-5412

CJA Counsel for Petitioner

11